UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 6: 06-37-DCR |
| | ) | Civil Action No. 6: 08-7051-DCR |
| V. | ) | |
| | ) | |
| EMMITT LEE ROPER, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant/Movant Emmitt Lee Roper was convicted on six substantive counts involving possession and distribution of cocaine and possession of a firearm relating to a drug crime. On April 23, 2007, he was sentenced to a total term of 60 months imprisonment after receiving a reduction for cooperating with the government. [Record No. 38] This matter is pending for consideration of Roper's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255. [Record No. 58] In support of the relief sought, Roper contends that his attorney was ineffective for failing to assert that the gun he possessed was for barter and was not used in connection with his drug offenses. Additionally, he argues that his attorney was ineffective for failing to object to the use of a preponderance of evidence standard to find him guilty of the firearms count.

As discussed below, Roper entered a knowing and voluntary plea and did not proceed to trial. His first claim for relief is not well-taken because he was not charged or convicted with *using* a firearm during a drug offense. Instead, his guilty plea was accepted by the Court after

-1-

he admitted that he *possessed* the firearm in connection with a drug offense. His second argument is also meritless. Because Roper entered a plea and admitted his conduct, there were no factual issues to resolve under any evidentiary standard. Roper's motion will be denied and the Court will not grant a Certificate of Appealability as to either issue raised by him.

**I.**

Roper was indicted by a federal grand jury on April 27, 2006, and charged with four counts of knowingly and intentionally distributing cocaine in violation of 21 U.S.C. §841(a)(1) [Counts 1-4], one count of knowingly and intentionally possessing with intent to distribute cocaine in violation of the same statutory section [Count 5], and one count of carrying a firearm during and in relation to the drug trafficking crimes charged in Counts 4 and 5 in violation of 18 U.S.C. §924(c)(1) [Count 6]. Through Counts 7 and 8, the government sought forfeiture of currency as well as the firearm and ammunition that Roper possessed at the time of his arrest. [Record No. 1] Roper was arraigned on May 11, 2006, before United States Magistrate Judge J. B. Johnson, Jr. Roper subsequently retained attorney Danny Rose to represent him in the action. [Record No. 7] Due to continuing cooperation with the government, Roper's original trial date was continued from the July 18, 2006, until December 12, 2006.

On December 4, 2006, Roper filed a motion for rearraignment for purposes of entering a guilty plea to all substantive counts. [Record No. 18] The transcript of Roper's rearraignment hearing reflects that he knowingly and voluntarily entered a guilty plea after being advised of the rights that he would be giving up by not proceeding to trial. Further, at the time of this hearing, Roper was advised by the Court of the penalties he faced. After the assistant United

States Attorney reviewed the substance of the written Plea Agreement, both Roper and his attorney acknowledged that the agreement had been accurately summarized and that the defendant fully understood its terms and conditions. At no time did Roper express any dissatisfaction with his attorney or challenge the facts relating to his possession of a firearm at the time of a drug offense. Likewise, Roper acknowledged that there were no other promises made to him other than those contained in the Plea Agreement. [Record No. 48, pp. 8-9, 10-13]

The Court also explained the manner in which Roper's guideline range would be determined and the manner in which any potential objections would be resolved under the United States Sentencing Guidelines (USSG). While the Court explained that it would apply a preponderance of evidence standard in resolving objections, this became a moot point when no objections were made to Roper's Presentence Investigation Report (PSR) after it was prepared by the United States Probation Office and disclosed to the parties. [*Id.* at 16-17]

At the conclusion of the rearraignment hearing, the Court read the substantive counts of the indictment to the defendant and ask that he explain what he had done to be guilty of the charges against him. Roper gave the following explanation and confirmed that the information contained in the factual statement of his Plea Agreement was accurate:

> THE COURT: Now, what I would like to do at this time, Mr. Roper, is review the counts that are charged in the indictment. After I've finished, I'm going to ask you to tell me in your own words what it was that you did to be guilty of these charges. I understand that there may be some additional facts that I'll need to go over that are contained in your plea agreement, but I'm really interested in getting you to tell me what it was that you did in this case. So let me review the counts with you at this time. I'm going to go through all eight of these. I'm going to summarize the forfeiture counts . . .

** ** ** **

> [THE COURT] Now, if you would, if you could tell me in your own words what it was that you did to be guilty of those offenses, Mr. Roper.
>
> THE DEFENDANT: Okay. I sold cocaine to a lady four times, I had a gun in the console of my truck, and I had cocaine in possession when they picked me up.
>
> \*\*   \*\*   \*\*   \*\*
>
> THE COURT: You sand you had a weapon that's identified in Count Six and Seven in your possession?
>
> THE DEFENDANT: Yes, sir, I did.
>
> \*\*   \*\*   \*\*   \*\*
>
> THE COURT: There's also some additional facts that are outlined in paragraph two of your plea agreement. I know you've indicated that you've had a chance to read the plea agreement. Are the facts true and correct, to the best of your knowledge and belief?
>
> THE DEFENDANT: Yes, sir, they are.
>
> \*\*   \*\*   \*\*   \*\*
>
> THE COURT: And do you believe if this matter proceeded to trial, to the jury, that the United States could prove the facts that are outlined in paragraph two of your plea agreement, could prove those facts to a jury beyond a reasonable doubt?
>
> THE DEFENDANT: Yes, sir, I do.

[Record No. 48, pp. 22-23, 24, 26]

Roper's Plea Agreement was reviewed and tendered to the Court at the time of the rearraignment hearing. The second numerical paragraph of that document confirms the factual basis supporting the defendant's guilty plea to all substantive counts. This paragraph provides:

> Between March 31, 2005, and April 12, 2005, detectives with the Appalachia HIDTA Hazard Task Force, utilizing the services of an informant, made four

controlled buys of controlled substances from Emmitt Lee Roper. These controlled buys were as follows:

| 3/31/05 | Cocaine | 2.745 grams |
|---------|---------|-------------|
| 4/1/05  | Cocaine | 3.362 grams |
| 4/11/05 | Cocaine | 2.773 grams |
| 4/12/05 | Cocaine | 3.351 grams |
|         | **TOTAL** | **12.221 grams** |

In addition, shortly after the April 12th buy, the defendant was arrested inside his vehicle. During a search of his person and vehicle, officers located additional cocaine (**24.579 grams**), $160 in buy money, a .38 caliber handgun loaded with 5 rounds of ammunition, and $1,248 in U.S. Currency. All drugs from the buys and that seized from the defendant and in his vehicle were sent to the Kentucky State Police Forensic Laboratory, where it was tested and confirmed to be cocaine, a Schedule II controlled substance.

[Record No. 21]

A dispute developed between Roper and his retained counsel prior to the sentencing hearing.[1] On December 29, 2006, Roper submitted a letter to the Clerk of the Court advising that he had released his attorney on December 9, 2006. He requested that counsel be appointed as

---

[1] The affidavit filed by attorney Danny Rose confirms that Roper did not advise him that the firearm that he possessed during the drug transactions had been exchanged for drugs. According to Rose:

> 2) . . . at no time, to the best of my recollection, did the defendant assert that the firearm that he had was exchanged for drugs.
>
> 3) . . . the defendant attempted to get a reduction in sentence by cooperating with the police.
>
> 4) . . . I reviewed the evidence the United States submitted. It was more than overwhelming. In over twenty years as a defense lawyer and a prosecutor, I can't remember a better factual case for the prosecution. The defendant was charged with various counts involving his selling drugs in the Hazard, Kentucky area. He was video taped and he made a confession.

[Record No. 71; attached Affidavit]

soon as possible. [Record No. 25] Thereafter, on January 8, 2007, retained counsel Danny Rose filed a motion to withdraw. [Record No. 27] The Court conducted a hearing on the matter on January 9, 2006. After hearing from Roper and attorney Rose outside the presence of the AUSA, the Court allowed Rose to withdraw and appointed new counsel (Brandon Storm) to represent Roper in accordance with the Criminal Justice Act. [Record No. 52]

The sentencing hearing was held on April 23, 2007. [Record No. 34, 50] Prior to this hearing, the United States Probation Office prepared and disclosed the parties Roper's PSR. [Record No. 43] Roper did not express any dissatisfaction with his new attorney at any point during the sentencing hearing. Likewise, neither Roper nor his attorney made any objection to the factual information or guideline calculations contained in his PSR. In relevant part, his PSR provided as follows:

> 20. Based on his conduct in the offense, Roper is responsible for the distribution of 12.221 grams of cocaine and responsible for possessing with the intent to distribute 24.579 grams of cocaine. He is responsible for the distribution of 4 methadone pills. Each pill (bearing the imprint 54/142) contains 10 milligrams of methadone hydrochloride with a total average weight of 200 milligrams per tablet. *Roper is also responsible for possessing a loaded .38 caliber handgun in relation to a drug trafficking crime.*

(Emphasis added.) [Record No. 43] In light of Roper's criminal history classification, he faced a guideline range of imprisonment of 10 to 16 months for Counts 1 through 5. Additionally, he faced a term of imprisonment of 60 months imprisonment on Count 6, which was to be imposed to run consecutive to the sentence imposed on Counts 1 through 5. [Record No. 43, ¶ 62] 21 U.S.C. §924(c)(1)(A)(i).

Roper was relieved of the mandatory, consecutive term of imprisonment for the gun offense as a result of the United States' motion based on his substantial assistance filed pursuant to USSG §5K1.1 and 18 U.S.C. §3553(e). [Record No. 50, pp. 3, 6-8] Again, review of the transcript of the sentencing hearing confirms that Roper did not object to his guideline calculations or attempt to retract his earlier admissions regarding possession of a firearm in connection with his drug trafficking crimes. However, in responding to the Court's questions regarding the misleading nature of Roper's criminal history score, his attorney addressed the fact that, while the defendant possessed a firearm in furtherance of the drug offenses, he did not use or brandish it.

> MR. STORM: . . . And regarding the revolver that was included in this case, Mr. Roper admits he had a revolver in his vehicle when he was stopped by law enforcement. We think it's important to note that that revolver was not on his person, it was in the console of his vehicle, and once being approached by law enforcement in this case, Mr. Roper made no attempt to grab the weapon, aim it at law enforcement, brandish it, discharge –
>
> THE COURT: He's not charged and there weren't any enhancements for brandishing or discharging the weapon.
>
> MR. STORM: Yes, Your Honor.
>
> THE COURT: That really kind of gets us back to, I guess our starting point, with one exception, and that is, I know that you indicate in your sentencing memo or I believe you indicated in your sentencing memo[2] that the drugs were on his

---

[2] The defendant's sentencing memorandum filed April 4, 2007 provides, in relevant part, as follows:

> When considering a proper sentence for Mr. Roper, it is important to note that Mr. Roper fully admits his offensive conduct, including possessing a firearm. However, it is imperative to emphasize that the revolver was located in the console of his truck, not on his person. Moreover, Mr. Roper did not brandish nor did he discharge the firearm when apprehended by law enforcement.

[Record No. 33, p. 6]

person and the revolver was in the console of the automobile. But, in fact, there was some money that was the subject of forfeiture and also one baggie of cocaine that was located in the console as well; is that –

MR. STORM: Yes, Your Honor, that's correct. It's just our position – I may not have been clear in that document, it was our position that the revolver was located in the console. Now, there may have been narcotics located with that, we don't necessarily contest that, but we think it's important that the revolver was located in the console as opposed to on his person.

THE COURT: And the point is he didn't attempt to get control of that gun, brandish it or use it in any way?

MR. STORM: Yes, Your Honor. Once he realized that law enforcement was closing in on him, he made no attempts to try to fend law enforcement off, made no attempts to flee.

[*Id*. at pp. 12-13]

Following this discussion, Roper chose not to address the Court further. [*Id*. at 14] Based on the information contained in the PSR and the additional information and arguments of the parties, the Court sentenced Roper to a total term of imprisonment of 60 months with a five year term of supervised release to follow. This sentence reflected a total reduction of 16 months of imprisonment for Roper's cooperation with the government. [*Id*. at pp. 15-17] After the Court announced the sentence, Roper was given the opportunity to object to the sentence and to any of the proceedings held in the case. However, no objections were made. [*Id*. at p. 21]

Although Roper waived a number of appellate rights, he retained the right to appeal and collaterally challenge his sentence. [Record No. 21, ¶ 6] On April 30, 2007, his appointed counsel filed a notice of appeal regarding his sentence. According to Roper's notice, he did not feel that the sentence he received was in conformity with the United States Sentencing Guidelines or the statutes under which he was charged. [Record No. 39] On October 2, 2008,

the United States Court of Appeals for the Sixth Circuit rejected Roper's arguments and affirmed this Court's sentencing determination. [Record No. 57] Roper did not seek review by the United States Supreme Court. Instead, on December 3, 2008, he filed the current §2255 motion.

**II.**

To establish a claim of ineffective assistance of counsel, a defendant must demonstrate both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (a petitioner must prove ineffective assistance of counsel by a preponderance of evidence). To prove deficient performance, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S.Ct. at 2064. Thus, under the standard set out in *Strickland*, the question becomes whether the petitioner can demonstrate that his attorney's representation "fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064-65. Further, scrutiny of counsel is "highly deferential," and includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. To prove prejudice, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id.*

at 2068. Finally, when evaluating claims of prejudice, courts will consider the totality of the evidence presented in the proceeding. *Id*. at 2069.

Through the present motion, Roper contends that his trial attorney was ineffective because he did not argue that the firearm found in his vehicle at the time of his arrest was not a "firearm" as that term is used in the 21 U.S.C. §924(c) but was, instead, simply a "medium of exchange." Next, he asserts ineffective assistance because his attorney did not object to the Court's use of a preponderance of evidence standard in finding him guilty of the firearm charge. [Record No. 58] Both arguments fail.

### A. "Use" of Firearm in Connection with Drug Offense

Citing *Watson v. United States*, 128 S.Ct. 579 (2007), Roper contends that the Court should set aside his gun conviction. He argues that, under this recent authority, he should not have been convicted under 21 U.S.C. §924(c)(1)(A) because he did "use" the firearm in connection with the drug trafficking offenses. Instead, he now alleges that he possessed it as a "medium of exchange." [Record No. 58, pp. 9-12] According to Roper, his attorney should have anticipated that *Watson* would place restrictions on convictions under the governing statute and objected to the firearm charge. He asserts that the failure to do so constitutes ineffective assistance of counsel. This argument is factually and legally misplaced.

In *Watson,* the Court held that receiving a firearm as payment for drugs does not constitute "use" of the firearm as that term is defined in 18 U.S.C. § 924(c). When a defendant had only received the firearm in payment for drugs, he was not engaging in criminal conduct and, therefore, a conviction for such use of a firearm under § 924(c) cannot stand. However, as

the United States correctly points out in its response to Roper's motion, Roper was not charged with using the subject firearm but with carrying it in connection with a drug offense. [Record No. 66] The "carry" prong of §924(c) is not limited to carrying the firearm on the defendant's person. It also applies to a person who "knowingly possesses and conveys firearms in a vehicle, including in the locked glove compartment or trunk of a car." *Muscarello v. United States*, 532 U.S. 125, 126-27 (1998). *See also United States v. Kuehne*, 547 F.3d 667, 684 (6th Cir. 2008); *United States v. Robinson*, 390 F.3d 853, 878 (6th Cir. 2004); and *United States v. Washington*, 127 F.3d 510, 514-15 (6th Cir. 1997).

Roper's admissions that he possessed the firearm listed in Count 6 of the indictment and that he did so in connection with a drug transaction is sufficient to sustain a conviction under the statutory section in issue. This fact was confirmed during the rearraignment hearing, in paragraph 20 of the PSR, and during the sentencing hearing. Although Roper now contends that the weapon found in his possession was not "used" in connection with drug transaction, no evidence has been offered that he accepted the gun in exchange for the drug charged in any of the substantive counts. Likewise, he does not contend that he advised his trial attorney of this claim. And in light of the fact that the confidential informant paid cash for drugs supplied by Roper, his argument carries even less weight.

In short, the Supreme Court's 2007 decision in *Watson* does not alter the result in the present case. *See United States v. Hicks*, 2008 U.S. Dist. LEXIS 10101 at *7 (E.D. Ky., Feb. 11, 2008) (*Watson's* limitation on the applicability of the "use" of a firearm within the context of a barter transaction to obtain a firearm does not implicate a situation in which the defendant

keeps a firearm under the seat of his vehicle while he transports controlled substances). As the court concluded in *Davis v. United States*, 2010 U.S. Dist. LEXIS 77631 (S.D. Ohio, Aug. 2, 2010), where a defendant's conviction for possession of a firearm in relation to a drug trafficking offense is unrelated to how he came into possession of the firearm, his assertion that it was received in barter for drugs is of no consequence.

> As the Report and Recommendation points out, petitioner's counsel represented in the sentencing memorandum that the factual predicate for the §924(c) conviction was the fact that, when petitioner's home was searched, a weapon was found in a safe with the narcotics which formed the basis of the drug trafficking charge. How and when petitioner obtained that weapon was irrelevant; it was its presence in the safe on the day in question – a day apparently subsequent to the date on which petitioner allegedly bartered drugs for the gun – which caused him to be convicted under §924(c). Thus, the question he raises under the *Watson* case, which is whether obtaining a gun in exchange for drugs can violate the possession in furtherance prong of §924(c), simply has no application to the facts of this case.

*Davis*, at *3-*4. Likewise, in the present case, it is of no consequence whether Roper acquired the firearm in exchange for drugs on some unidentified date prior to April 15, 2005 – the date charged in Count 6. He was not charged with using the firearm in connection with a drug transaction. And his admissions that he possessed it in furtherance of his drug trafficking activities is sufficient to sustain his conviction and sentence.

Finally, to the extent that Roper asserts that *Watson v. United States*, 128 S.Ct. 579, constitutes a change in the law in this circuit and that his attorneys were ineffective for failing to predict this change, his claim fails. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 288 (6th Cir. 2010) (counsel is not ineffective for failing to predict the development of the law).

*Watson* was decided nearly one year after Roper entered his guilty plea. Roper's attorneys could not have been ineffective for failing to predict a future development in the law.

    **B.**    **Preponderance of Evidence**

Because it is undisputed that Roper did not proceed to trial and did not contest any factual information contained in his PSR, the Court was not called upon to make any findings by a preponderance or any other evidentiary standard. Thus, Roper's second argument is moot and the Court does not find it necessary to address this point further.

    **C.**    **Certificate of Appealability**

A Certificate of Appealability may issue when a movant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). Therefore, before a certificate would issue in this case, Roper must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 335-37 (2003) (discussing development of standard). Further, if appropriate, this Court must indicate which specific issues satisfy the "substantial showing" requirements. 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F.App'x 771, 774 (6th Cir. 2005) (noting the requirement of "individualized assessment of claims, citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)).

Roper has not made a "substantial showing" as to any claimed denial of rights in this case. Substantial evidence supports his conviction for carrying a firearm during the commission of a drug trafficking crime. Additionally, because no disputed factual issues were presented for the Court to resolve at the time of the sentencing hearing, any argument that the Court would

have applied the wrong standard to resolve such disputes is purely hypothetical. However, abundant authority from the Sixth Circuit recognizes that district courts apply a preponderance of evidence standard when factual disputes are presented. Therefore, the Court will not issue a Certificate of Appealability as to either issue raised in Roper's §2255 motion.

### III.

For the reasons discussed above, it is hereby

**ORDERED** as follows:

1. Defendant/Movant Emmitt Lee Roper's motion to vacate, set aside, or correct his sentence [Record No.58] is **DENIED**.

2. This habeas action filed pursuant to 28 U.S.C. §2255 is **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket.

3. A separate Judgment in conformity with this opinion shall be entered this date.

This 10th day of December, 2010.



Signed By:
*Danny C. Reeves* DCR
United States District Judge